IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DONALD FULFOR, JR., ) <br> ) <br> Defendant. ) <br> ) | 8:08CR396 <br><br> **SENTENCING MEMORANDUM** |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on June 1, 2009.

**I. FACTS**

On October 22, 2008, defendant Donald Fulfor, Jr., was charged with receipt or distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count I), possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count II), and civil forfeiture of computer equipment and files under 18 U.S.C. § 2253 (Count III). Filing No. 1, Indictment. Pursuant to a plea agreement, Fulfor entered a plea of guilty to the receipt or distribution charge and agreed to forfeit the property. Filing No. 26, Plea Agreement. The government agreed to dismiss Count II at sentencing and to recommend a sentence at the low end of the sentencing range. Filing No. 26, Plea Agreement at 1-2. Section 2252A makes it a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). Under the statute, the mandatory

minimum sentence is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1).[1]

The court accepted Fulfor's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 23. The Probation Office based its outline of the offense conduct on the prosecutor's version of events and on an interview with the case agent. PSR at 4-5. As part of a Nebraska State Patrol investigation of peer-to-peer (P2P) networks, officers connected with a Limewire user and were able to browse folders being shared by Fulfor, and to download two videos containing child pornography. *Id.* at 4. Nebraska State Patrol officers later seized Fulfor's computer and found seventy-two pictures and thirteen videos containing child pornography, including prepubescent children, bondage, and erotica stories of incest and adult/child sex. *Id*. at 4-5.

The Probation Office determined that U.S.S.G. § 2G2.2(a)(2) provided a base offense level of 22 for the defendant's violation. It found Fulfor accountable for a total of 1,047 images of child pornography, including thirteen videos, calculated under the Guidelines as 75 images per video. It also found the following upward adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B), (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of

---

[1]In contrast, the crime of possession of child pornography, charged in Count II, carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252 (b)(1).

value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[2] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). The application of these enhancements resulted in an adjusted offense level of 40. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 37. Fulfor has no criminal record and his criminal history category is I. At base offense level 37 and criminal history category I, Fulfor's Guidelines range of imprisonment is 210 to 240 months. The government adopted the findings in the PSR. Filing No. 32.

Fulfor moved for a sentence outside the Guidelines range. Filing No. 40. He argued for a deviation from Guidelines range under 18 U.S.C. § 3553(a) because a psychological evaluation found that he is a low risk for committing sexual violence in the future. Fulfor's psychological evaluation shows that he has been diagnosed with adjustment disorder with anxiety (acute). Fulfor was administered a battery of tests including a mental status exam, the Wechsler Abbreviated Scale of intelligence, the Millon Clinical MultiaxialI Inventory III, the Minnesota Multiphasic Personality Inventory - 2-RF, and the Sexual Violence Risk - 20 Evaluation/Procedure. The results of those tests indicate that he has alcohol abuse or dependence issues, but that his risk rating on the

---

[2]The prosecution's version of the offense in the PSR states that the materials contained a video showing penetration of a five-year old girl. Under 8th Circuit case law, this conduct qualifies as sadistic conduct." *United States v. Diaz,* 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.")..

sexual violence risk test is low. Substance abuse, namely alcohol, was the only negative risk variable attributed to Fulfor. The psychologist concluded that Fulfor's behavior "is closer to that of an adolescent rather than one who is 22 years old" and made an assumption "that he is in a development stage yet, going through a life stage." He concluded that Fulfor would benefit from therapeutic counseling to "gain an understanding of his basic needs" and "assist him in learning alternative methods of developing appropriate behaviors."

## II.  LAW

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. 38, –-, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. 85, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including a disagreement with the Guidelines); *Rita v. United States,* 551 U.S. 338, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines

4

but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246).  These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring): *see also Spears v. United States*, — U.S. —, —, 129 S. Ct. 840, 843 (2009) (per curiam) (recognizing the district courts' authority to vary from Guidelines based on policy disagreement, and not simply based on an individualized determination that they yield an excessive sentence in a particular case).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities

5

among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d

1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).  In formulating the Guidelines, the Commission developed and used data on past practices and recidivism.  *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.  Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.  When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence).  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75.  In such cases, it is "not an abuse of

discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

For policy reasons, and because of statutory mandatory minimum sentences, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child abuse crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. The Guidelines for child exploitation offenses were not developed under the prior statistical approach, but were promulgated, for the most part, in response to statutory directives.[3]  *See*, *e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex*

---

[3] Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors and prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B (making it a criminal offense to use "a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

8

*Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996) ("Sex Offenses Against Children Report"); *see also United States v. Huffstatler,* 561 F.3d 694, 696 (7th Cir. 2009) (noting that "the child-pornography sentencing guidelines, like the drug guidelines at issue in *Kimbrough* are atypical in that they were not based on the Sentencing Commission's nationwide empirical study of criminal sentencing."); *see United States v. O'Connor,* — F.3d —, —, 2009 WL 1479648, *3 n.4 (8th Cir. May 28, 2009) (8th Cir. May 28, 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the 100-to-1 crack/powder cocaine disparity).

At the inception of the Guidelines, it was no a crime to simply possess child pornography and the relevant Guideline provision, § 2G2.2, covered only the "transporting, receiving, or trafficking" of child pornography. *See* U.S.S.G. § 2G2.2 (1987). The acts of possessing child pornography and possessing with intent to sell were criminalized as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography). As part of the Crime Control Act, Congress also directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990). In response, the Commission proposed the creation of a separate guideline provision, § 2G2.4, with a base offense level of 10, that would cover possessing, receiving, or transporting child pornography. *See* Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed.

9

Reg. 1846-01, 1863, 1991 WL 310646 (F.R.) (proposed Jan. 17, 1991). Under the Sentencing Commission's proposal, trafficking would continue to be covered in § 2G2.2, with a base offense level of 13. *Id.* at 1863-64.

Over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lowered the penalties for child pornography crimes, explicitly directed the Commission to alter the Guidelines to correspond to its perception of the Crime Control Act. *See proceedings and debates of the 102nd congress, First Session,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991). It rejected the Sentencing Commission's advice and in doing so, abandoned the studied "empirical" approach to sentencing with respect to child pornography crimes. *See id.* at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins). Congress explicitly directed the Sentencing Commission to increase the base offense level for simple possession from 10 to 13, to include "receiving" pornography in the Guidelines section that governed trafficking and transporting, to increase the base offense level for receiving, transporting, and trafficking from 13 to 15, to add enhancements for the number of items possessed and an enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor. *Id.* at H6741.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children. *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted)); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995)). It also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child

pornography for submission to Congress. Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted).

The Sentencing Commission carried out the directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer. *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4). The Commission also clarified and broadened the definition of the "pattern of activity" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders." Sex Offenses Against Children Report at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes. Sex Offenses Against Children Report at ii. The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." *Id*. at i. In compiling and analyzing its statistics, however, the Sentencing Commission noted that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court. *Id*. The Commission stated that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe,"

but noted that amendment may "be appropriate to increase sentences for the most dangerous offenders." Sex Offenses Against Children Report, Executive Summary at 1.

Congress responded to the Commission's report with legislation increasing penalties for child pornography, exploitation and abuse. Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1995) (enacted). Congress directed the Commission to increase penalties and add enhancements and to clarify that distribution included distribution for nonpecuniary gain. *Id.,* 112 Stat. at 2980-82. The Sentencing Commission afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution. U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000).

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), which established a five-year mandatory minimum sentence for trafficking/receipt offenses, increased the statutory maximum for possession offenses from five to ten years, and increased the statutory maximum from 15 to 20 years for trafficking/receipt offenses. 18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6) *and see* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003). Congress also issued further directives to the Sentencing Commission. *See* U.S.S.G. App. C, Supp. Vol., amend. 649 (Apr. 30, 2003), 664 (Nov. 1, 2004). To conform to the new mandatory minimum sentences and higher statutory maxima, the Sentencing Commission raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18. *Id.* The

Commission also added several enhancements for specific offense characteristics and significant enhancements for the number of images possessed, received or distributed. *See id.* The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences. *Id.*

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000). The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The text and structure of the criminal statute under which the defendant was charged and convicted prohibits several categories of conduct ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography or an obscene visual depiction of a minor engaging in sexually explicit conduct to "knowingly selling or

13

possessing with intent to sell" child pornography.  18 U.S.C. § 2252A(a)(1)-(4). Possession is punishable by a sentence of up to 10 years.  18 U.S.C. §§ 2252A(A)(5); 2252A(b)(2).[4]

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice.  Fifteen-Year Assessment at 23-24.  To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances."  *Id.* at 24.  Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime.  Fifteen-Year Assessment, Executive Summary at xii.  The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge."  United States Sentencing Commission, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) *(*"Mand. Min. Rep't"), availiable at http://www.ussc.gov/reports.  The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system.  Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting

---

[4]This penalty corresponds to the statutory range of 0 to 10 years for possession under 18 U.S.C. § 2252(a)(1)(4)(B).  That statute carries a maximum sentence of ten years for a first offender, with no mandatory minimum.  *Id.*

14

that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

### III. ANALYSIS

#### A. Guideline Calculation

The court will first calculate the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR. The court finds that Fulfor's base offense level under the Guidelines is 22. See U.S.S.G. § 2G2.2(a)(1). The court further finds the following adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor, a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence, a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer, and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The application of these enhancements resulted in an adjusted offense level of 40. The court finds an adjustment for acceptance of responsibility is warranted and the government moves for a three-level adjustment, resulting in a total offense level under the Guidelines of 37. At criminal history category I, the defendant's advisory Guidelines term of imprisonment is 210 months (roughly ten and a half years) to 240 months (twelve years).

#### B. Section 3553 Factors

In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense. It is one of a class of crimes that

involve commercial sex acts, sexual exploitation of minors, and obscenity covered under part G of the Guidelines. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Possession of pornography is the least serious of the crimes on the continuum of conduct—from possession to distribution to production to predatory abuse—that exploit children. One who possesses child pornography is considerably less culpable than one who produces or distributes the exploitative materials and a possessor is a marginal player in the overall child exploitation scheme. Similarly there are different levels of participation and blameworthiness with respect to distribution. Although file-sharing arrangements facilitate Internet trafficking in child pornography, sharing child pornography in exchange for the privilege of sharing others' child pornography files is qualitatively different from selling child pornography for profit. In the context of this type of distribution arrangement, the number of files or images possessed does not correspond to any actual or perceived position of power within a distribution hierarchy.

      The statutes criminalizing the possession of child pornography, as amended over time and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. As noted, Fulfor was originally charged with a violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography, as well as 2252A(a)(2), receipt of child pornography. Under the plea agreement, the government moved to dismiss

the Section 2252(a)(4)(B) charge, which carried no mandatory minimum sentence. In the context of most Internet child pornography crimes, there is no principled distinction between receipt and possession. In order to obtain child pornography via the Internet, it is generally necessary to receive the pornography in order to possess it. The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence in 2252A. Fulfor is a low-level consumer of child pornography whose sentence should fall at the low end of the statutory range.

The court has also considered the defendant's history and characteristics. The record shows that Donald Fulfor is twenty-two years old and served in the Air Force as a Senior Airman until he was arrested and charged with this crime. He began drinking alcohol at age 15. In addition, he has abused prescription painkillers since age nineteen. He believes that he has an alcohol abuse problem and is receptive to treatment. He is a high school graduate and has completed some college. He is in the high-average to superior range of intelligence. He has no criminal history and there is no evidence that he was ever a pedophile, sexual predator or child abuser or that he will be one in the future. His psychological evaluation shows a lack of maturity.

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements. The court has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are driven by statute, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Sentencing Guidelines

is outside the sentencing commission's area of expertise and need not be accorded deference by the court. The court finds that the Guidelines ranges of imprisonment may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case. Because of the government's charging decisions and the plea agreement, Fulfor is already subject to a mandatory minimum sentence of five years. In this case, the application of numerous Guidelines enhancements inordinately increases Fulfor's Guidelines range of imprisonment. Fulfor's plea to receipt and distribution instead of possession increases his base offense level, at the outset, from 18 to 22. The enhancements applied under the Guidelines raise his offense level by 18 additional levels to 40, and raise the low end of his sentencing range from roughly three years to seventeen years. Base offense levels over 40 roughly equate to sentences of thirty years or more. The highest offense level under the Guidelines is 43, which assigns a life sentence at all criminal history levels. That level should be reserved for only the most serious of offenses and most dangerous of offenders. The application of the solitary downward adjustment for acceptance of responsibility does not adequately compensate for the increase that Guidelines enhancements would cause.

Also, Fulfor is subject to enhancements for use of a computer and for number and type of images that apply in virtually every case. Those enhancements lack value as a reliable proxy for culpability and cannot be used to gauge the relative culpability between offenders. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. An enhancement for images that contain prepubescent children is also typical of these crimes. Because of the increased ability to easily and

inexpensively capture and store images with computers, reliance on the number of images to provide the distinction between a large-scale and a small-scale child pornography purveyor is no longer the reliable indicator that Congress and the Sentencing Commission envisioned when promulgating the quantity-driven enhancement. Any nexus between the number of images and a defendant's culpability is attenuated because of the unfortunate ease with which a large number of images can be accessed and obtained. In this type of distribution scheme, number of images is meaningless as an indicator of a defendant's position in a hierarchy. Whatever connection there may be between a defendant's relative guilt and the number of images, a five-level increase overstates that connection. Moreover, a four-level enhancement for portrayal of sadistic or masochistic conduct or images of violence will apply whether or not a defendant specifically intends to possess such material and is thus another inadequate measure of culpability. As broadly defined to include any acts of penetration against a child, the enhancement of sadistic or masochistic conduct or images of violence will be applied in many, if not most, cases.

In making this determination, the court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. Legislative history also shows Congress' concern with dangerous child abusers and repeat offenders. Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders. Fulfor does not fall within that class. There is

no evidence that he has, or is likely to, abuse children. On the culpability spectrum of increasingly serious child exploitation offenses, Fulfor is an example of a defendant who deserves a sentence at the low end of the statutory range.

The court finds that a shorter sentence than the Guidelines recommend for this defendant will respect the distinction between the defendant's culpability and the far greater culpability of an actual predator or abuser. The sentence of a purveyor of child pornography should be proportional to and lower than a sentence for an exploitative crime that involves acts of abuse by a defendant. The court finds that a sentence of five years will provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. Five years is a significant term of imprisonment for a first offender. The public will be adequately protected by a term of supervised release with strict conditions and by the provision of alcohol and sex offender treatment to the defendant. The mere fact of Fulfor's prosecution and conviction will deter others from engaging in this sort of conduct. The deterrence value of any longer sentence would be marginal. Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Fulfor's ability to return to society as a productive citizen.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 25th day of June, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge